UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Roberta Zerveskes</u>

    v.                                                    Case No. 24-cv-025-SE-TSM
                                                               Opinion No. 2024 DNH 084

<u>Wentworth-Douglass Hospital and</u>
<u>Mass General Brigham Incorporated</u>

**O R D E R**

Wentworth-Douglass Hospital ("WDH") and Mass General Brigham Incorporated terminated Roberta Zerveskes in 2021 when she did not comply with their mandatory COVID-19 vaccination policy. Zerveskes alleges that the defendants violated her rights under state and federal statute by discriminating against her based on her religion, failing to accommodate her religious beliefs, and retaliating against her. She also alleges that the defendants wrongfully terminated her under New Hampshire common law because of her religious beliefs and because she refused the vaccine. The defendants move to dismiss the complaint under Rule 12(b)(6) on the basis that it fails to state a claim.

<u>Standard of Review</u>

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff must make factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

To test a complaint's sufficiency, the court must first identify and disregard statements that "merely offer 'legal conclusions couched as fact' or 'threadbare recitals of the elements of a

cause of action.'" Ocasio–Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) (quoting Iqbal, 556 U.S. at 678 (alterations omitted)). Second, the court must credit as true all nonconclusory factual allegations and the reasonable inferences drawn from those allegations, and then determine if the claim is plausible. See id.

Background

Consistent with this standard of review, the following facts taken from the complaint are assumed true. Zerveskes worked for WDH, part of Mass General's health care system, as a preloader from March 2019 until November 12, 2021. She could perform her job remotely and without any patient contact, which she did from August 2021 until the defendants terminated her employment.[1]

At some point in 2021 during the COVID-19 pandemic, the defendants issued a mandatory COVID-19 vaccination policy. Under the policy, the defendants would suspend or fire any employee who was not vaccinated against COVID-19 by October 15, 2021, and had not received a medical or religious exemption. In August 2021, the defendants sent emails to their staff "indicating their strong viewpoint on COVID and the shots. The tones of the emails were such that it was apparent Defendants wanted all employees to be vaccinated, even those who wanted to apply for an exemption." Doc. no. 1-1, ¶ 14.

---

[1] For ease of reference, the court refers to Zerveskes's employer as "the defendants" rather than WDH. As discussed below, Zerveskes alleges that Mass General is liable as either a joint employer or for aiding and abetting WDH's alleged unlawful discriminatory actions.

In early September 2021, Zerveskes requested a religious exemption to the vaccination policy excusing her from receiving both the COVID-19 and flu vaccines.[2] Although Zerveskes allegedly has "severe medical conditions," she did not request a medical exemption because her primary care physician refused to "meaningfully consult" with her or sign the exemption request. Doc. no. 1-1, ¶ 19. Zerveskes alleges that her doctor, a WDH employee, refused to assist her because of WDH's campaign to have all employees vaccinated against COVID-19.

On September 7, 2021, the defendants followed up with Zerveskes about her exemption request. They asked her why she received the flu vaccine in 2019 if her religious beliefs precluded her from receiving any vaccines. Zerveskes responded on September 12, 2021, that she felt coerced into receiving the flu vaccine in 2019 because WDH threatened to fire employees if they refused to receive it. She also explained that she had researched the ingredients in vaccines after the COVID-19 outbreak and no longer felt comfortable with them. She further stated that she has an associate's degree in biblical studies which heightened her religious objections.

On September 17, 2021, Zerveskes received an email from the defendants denying her request for a religious exemption to the vaccination policy. The email did not give any reason for the denial.

The defendants suspended Zerveskes on October 20, 2021, because she did not comply with the vaccination policy. Although the defendants did not have an appeal process for a denial of an exemption request, Zerveskes drafted a letter on October 26, 2021, appealing the decision and asking the defendants to explain their reason for the denial. The defendants did not respond.

---

[2] The defendants also had a mandatory vaccination policy regarding the flu vaccine. See doc. no. 16-1 at 23.

On November 18, 2021, Zerveskes received a letter of termination in the mail, which was dated November 12, 2021.

Discussion

Zerveskes's complaint includes five counts. The first three allege that the defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and New Hampshire Revised Statute Annotated ("RSA") § 354-A by discriminating against Zerveskes on the basis of her religion: religious discrimination/harassment/hostile work environment (Count I); religious discrimination/failure to accommodate (Count II); and retaliation based on religion (Count III). Count IV asserts a claim under RSA 354-A against Mass General for aiding and abetting discrimination, and Count V asserts a claim against both defendants for wrongful discharge under New Hampshire common law. Again, the defendants move to dismiss the complaint in its entirety. Zerveskes objects.

I.      Title VII Claims

"Because the New Hampshire Supreme Court relies on Title VII cases to analyze claims under RSA 354–A, the court will address [Zerveskes's] state and federal claims together using the Title VII standard." Hubbard v. Tyco Integrated Cable Sys., Inc., 985 F. Supp. 2d 207, 218 (D.N.H. 2013) (quotation and alteration omitted). Title VII prohibits an employer from "discharg[ing] any individual, or otherwise [ ] discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a). A plaintiff can assert a religious discrimination claim under Title VII based on different theories, and "each of these theories of

employment discrimination requires proof of different elements." Equal Emp. Opportunity Comm'n v. Baystate Med. Ctr., Inc., No. 3:16-CV-30086-MGM, 2017 WL 4883453, at *2 (D. Mass. Oct. 30, 2017) (citing Sánchez-Rodríguez v. AT & T Mobility Puerto Rico, Inc., 673 F.3d 1, 12-13 (1st Cir. 2012) and Kosereis v. Rhode Island, 331 F.3d 207, 212-13 (1st Cir. 2003)).

     A.    Count I – Harassment and Hostile Work Environment

In Count I, Zerveskes alleges that the defendants created a hostile work environment because of her religion.

> To make out a viable [Title VII hostile work environment] claim based on religion, the plaintiff must establish that: (1) she is a member of a protected class; (2) she was subject to uninvited harassment; (3) the offending conduct was because of her religion; (4) the harassment was severe and pervasive; (5) the offending conduct was both objectively and subjectively offensive and (where employer liability is sought); (6) there was a basis for such liability.

Rivera v. P.R. Aqueduct and Sewers Auth., 331 F.3d 183, 189 (1st Cir. 2003) (emphasis omitted).

"In assessing whether conduct is severe or pervasive and both objectively and subjectively offensive, [a court] evaluate[s] 'the severity of the conduct, its frequency, whether it is physically threatening or not, and whether it interfered with the victim's work performance.'" Xiaoyan Tang v. Citizens Bank, N.A., 821 F.3d 206, 217 (1st Cir. 2016) (internal quotations and citations omitted). Whether alleged harassment "was of a kind or to a degree that a reasonable person would have felt that it affected the conditions of her employment" is a question typically left to the jury. Rosario v. Dep't of Army, 607 F.3d 241, 247 (1st Cir. 2010). But Zerveskes must first plausibly allege that she was harassed at all. She cannot do so by relying on conclusory statements. Rae v. Woburn Public Schools, 113 F.4th 86, 111 (1st Cir. 2024). Instead, "to clear the plausibility hurdle, a complaint must contain enough facts to raise a reasonable expectation

5

that discovery will reveal evidence sufficient to flesh out a viable claim." Id. (quotations and alterations omitted).

Zerveskes's claim in Count I is based on her allegations that she was "treated differently than her co-workers and subjected to repeated emails espousing [the defendants'] unsupported beliefs as to the vaccine." Doc. no. 1-1, ¶ 59. However, her complaint contains no factual allegations to support her conclusory assertion that she was treated differently than her co-workers. And, as the defendants argue and Zerveskes concedes in her objection, an employer's emails encouraging its employees to get vaccinated do not support a religious discrimination claim based on a hostile work environment. See doc. no. 16-1 at 7-8 (agreeing that "emails encouraging vaccination do not on their own rise to the level of religious discrimination"); see also Leake v. Raytheon Techs. Corp., No. CV-22-00436-TUC-RM, 2023 WL 2242857, at *5 (D. Ariz. Feb. 27, 2023), (holding that constant email reminders encouraging employees to get vaccinated, and reminders of safety concerns do "not come close to meeting the demanding standard needed to state a legally valid hostile work environment claim" under Title VII), aff'd, No. 23-15320, 2024 WL 1854287 (9th Cir. Apr. 29, 2024). In other words, Zerveskes does not allege that she was harassed at all, much less that she suffered harassment that could be considered severe and pervasive.

Nevertheless, Zerveskes argues that her discrimination claim in Count I should survive because she alleges "the general category of religious discrimination." Doc. no. 16-1 at 8. Specifically, she clarifies in her objection that "her suspension without pay and termination constituted religious discrimination" and is the basis of her claim in Count I. Id. at 9. In response, the defendants argue in their reply that the court should dismiss Count I because Zerveskes's

6

"clarified" theory is duplicative of her discrimination claim based on a theory of failure to accommodate in Count II.

Although Zerveskes acknowledges that there is "[s]ome overlap" between Counts I and II, doc. no. 19 at 2, she contends that Count I should survive because it includes a "general" claim of discrimination that differs from her failure to accommodate claim in Count II. Some religious discrimination cases may include general discrimination claims distinct from claims for hostile work environment and failure to accommodate (for instance, if an employer allegedly terminates all employees of a certain religion). Zerveskes's filings, however, offer no cogent theory upon which her "general" claim of discrimination differs from her failure to accommodate claim in Count II. Instead, she offers a vague description of her claim that attempts to cloud the legal theory on which it is based. At bottom, though, Zerveskes fails to offer a theory of relief for her claim in Count I based on her suspension and termination that is not duplicative of her religious discrimination claim based on failure to accommodate in Count II. Therefore, Count I is dismissed. See, e.g., Caspersen v. W. Union, LLC, No. 23-CV-00923-NYW-SBP, 2023 WL 6602123, at *11 (D. Colo. Oct. 10, 2023) (dismissing Title VII religious discrimination claim based on "wrongful termination" because the plaintiff failed to plead facts to support a claim "separate from his claim based on a failure to accommodate").

B. <u>Count II – Failure to Accommodate</u>

Zerveskes alleges that the defendants discriminated against her by failing to accommodate her religious beliefs because they did not allow her to work remotely full-time or grant her an exemption to the vaccination policy. "Under Title VII, an employer must offer a reasonable accommodation to resolve a conflict between an employee's sincerely held religious

7

belief and a condition of employment, unless such an accommodation would create an undue hardship for the employer's business." Cloutier v. Costco Wholesale Corp., 390 F.3d 126, 133 (1st Cir. 2004) (citing 42 U.S.C. § 2000e(j)).

The First Circuit "applies a two-part framework to religious discrimination claims under Title VII. First, a plaintiff must make her *prima facie* case that a bona fide religious practice conflicts with an employment requirement and was the reason for the adverse employment action." Lowe v. Mills, 68 F.4th 706, 719 (1st Cir. 2023) (citation and alterations omitted). "If the plaintiff establishes her *prima facie* case, the burden then shifts to the employer to show that it offered a reasonable accommodation or, if it did not offer an accommodation, that doing so would have resulted in undue hardship." Cloutier v. Costco Wholesale Corp., 390 F.3d 126, 133 (1st Cir. 2004).

The defendants argue that Zerveskes has not made out a *prima facie* case because she does not allege a bona fide religious practice that conflicted with an employment requirement. Specifically, they contend that Zerveskes alleges that her concerns about the COVID-19 vaccine were largely medical rather than religious. They add that to the extent she claims that she had religious objections, they were based on vague religious beliefs and assertions that she is a person of faith, which are not specific enough to satisfy the standard.

In considering a religious discrimination claim, a court must determine "whether [a plaintiff's] assertions constitute religious beliefs—as opposed to philosophical, medical, or scientific beliefs, or personal fears or anxieties." Together Emps. v. Mass General Brigham, Inc., 573 F.Supp.3d 412, 440 (D. Mass. 2021), aff'd, 32 F.4th 82 (1st Cir. 2022). But "Title VII's 'capacious definition' of religion 'leaves little room for a party to challenge the religious nature of an employee's professed beliefs,' and that sincerity depends on a fact-intensive assessment of

8

credibility." Id. at 441 (quoting EEOC v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de P.R., 279 F.3d 49, 56 (1st Cir. 2002)).

      Although Zerveskes's complaint lacks details regarding her religious objections to the COVID-19 vaccine, she includes with her objection a copy of her exemption request, her response to the defendants' question about why she received the flu vaccine in 2019, and her letter appealing the defendants' denial of her exemption request. See doc. no 16-1 at 23-29. The court considers those documents at this stage because the defendants do not dispute their authenticity, they are central to Zerveskes's claims, and they are sufficiently referred to in the complaint. Ironshore Specialty Ins. Co. v. United States, 871 F.3d 131, 135 (1st Cir. 2017).

      In her exemption request, Zerveskes states that the COVID-19 vaccine "violates" her Christian faith. She specifically references that, pursuant to her faith, her "body is a temple of the Holy Spirit" and that the vaccine's "additives" make it "the equivalent of a prohibited 'unclean food.'" Doc. no. 16-1 at 24. In her September 12, 2021 letter responding to the defendants' inquiry about her past receipt of the flu vaccine, Zerveskes adds that she subsequently learned that certain vaccines contain human fetal cells or use fetal cells in the process of testing the vaccines.

      The defendants' argument that Zerveskes' exemption request contains several vague assertions and largely raises medical, rather than religious, objections is well-taken. Nevertheless, at this stage of the litigation, at least some of the statements in Zerveskes's exemption request and subsequent appeal and communications are sufficient to show that she had a sincerely held religious belief that conflicted with the vaccination policy. See Bazinet v. Beth Israel Lahey Health, Inc., 113 F.4th 9, 16 (1st Cir. 2024) (holding that objections based on COVID-19 vaccines being "developed using fetal cell lines that originated from aborted fetuses"

9

were sufficient to show a religious belief that conflicts with a vaccination policy for the purpose of a Title VII religious discrimination claim at the motion to dismiss stage); Pearson v. Tyson Foods, Inc., case no. 4:23-CV-01080-BSM, 2024 WL 1311420, at *2 (E.D. Ark. Mar. 26, 2024) (denying motion to dismiss Title VII religious discrimination claim where the plaintiff expressed concerns receiving vaccine would be equivalent to eating unclean food and harming her conscience); but see DiOrio v. Nat'l Educ. Ass'n, No. CV 23-246 WES, 2023 WL 7300080, at *10 n.11 (D.R.I. Nov. 6, 2023) (noting that expressing beliefs that a plaintiff is Christian and believes that her "body is a temple" would be insufficient to make out a Title VII religious discrimination claim), appeal dismissed, No. 23-2056, 2024 WL 3020533 (1st Cir. Mar. 21, 2024). For that reason, the defendants' motion to dismiss Count II is denied.

C.   Count III - Retaliation

Zerveskes alleges that the defendants retaliated against her based on her religious beliefs by terminating her, as well as by taking other actions related to denying her exemption request. To demonstrate a claim for retaliation under Title VII, a plaintiff "must show that (1) she engaged in protected activity; (2) she suffered some materially adverse action; and (3) the adverse action was causally linked to her protected activity." Stratton v. Bentley Univ., 113 F.4th 25, 41–42 (1st Cir. 2024). In other words, in a Title VII retaliation claim, the plaintiff must show that the protected activity was the but-for cause of the adverse employment action. Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 360 (2013).

Zerveskes alleges that she engaged in protected activity by applying for a religious exemption to the vaccination policy. Although it is far from clear that merely requesting a religious exemption to a mandatory vaccination policy constitutes protected conduct for the

purpose of a Title VII retaliation claim, the court assumes without deciding that Zerveskes has plausibly alleged the first element of that claim. See, e.g., Rosario-Velazquez v. Corporacion Educativa Ramon Barquin, No. CV 23-1347 (PAD), 2024 WL 3522412, at *2 n.5 (D.P.R. July 24, 2024) (casting doubt on the theory that applying for a religious exemption to a vaccine mandate constitutes protected conduct for the purpose of a Title VII retaliation claim, but assuming for the purpose of the analysis that the plaintiff engaged in protected activity). And Zerveskes's termination is the classic example of a materially adverse action, which satisfies the second element of a retaliation claim.

However, wholly absent from Zerveskes's complaint is any allegation that satisfies the third element of a retaliation claim: that her application for a religious exemption to the vaccination policy was the but-for cause of her termination. Rather, she alleges that the defendants imposed the vaccination policy on all employees and then suspended and fired her for failing to comply with that policy. Doc. no. 1-1, ¶¶ 20, 25 29. Such an allegation fails to plead a plausible claim for retaliation. See, e.g., Usmanov et al. v. Mass. Fin. Servs. Co., No. 1:23-CV-11631-JEK, 2024 WL 4028255, at *5 (D. Mass. Sept. 3, 2024) ("Put otherwise, where an employer provides notice of a mandatory vaccination policy and the consequences for noncompliance, and then terminates a plaintiff's employment in accordance with that policy, a plaintiff cannot make out a prima facie case of retaliation unless they allege facts that go beyond the employer's mere enforcement of its policy."); Schmidt v. Tchrs. Ins. & Annuity Ass'n of Am., No. 3:23-CV-00881-FDW-DCK, 2024 WL 3380152, at *4 (W.D.N.C. July 11, 2024) (dismissing Title VII retaliation claim because "[o]n the face of the Complaint, Defendant terminated Plaintiff because he did not comply with the vaccination mandate prior to the March

1, 2022, deadline, not because he submitted exemption requests or objected on religious grounds).

Zerveskes states in her objection that the defendants terminated her not only because she refused to comply with the vaccination policy, but also for "applying for exemptions[] and appealing that decision." Doc. no. 16-1 at 18. But she alleges no facts that could plausibly support her assertion that the defendants terminated her for any reason other than her refusal to comply with the vaccination policy. See, e.g., Usmanov, 2024 WL 4028255, at *6 (dismissing Title VII retaliation claim when there was no "allegation allowing for an inference that MFS retaliated against the plaintiffs for their opposition to its mandate" and instead "the amended complaint alleges that the plaintiffs were terminated after MFS denied their applications for religious exemptions. It thus supports the inference that the plaintiffs were terminated for their refusal to comply with MFS's policy, not for engaging in protected conduct.").

Therefore, the court grants the defendants' motion to dismiss as to Count III.

II.  Aiding and Abetting

Zerveskes alleges a claim against Mass General for aiding and abetting WDH's discrimination under RSA 354-A. See RSA 354-A:2, XV(d). She pleads this claim in the alternative to her allegation that Mass General is liable for Counts I-III as a joint employer. See doc. no. 1-1, ¶ 4.

The defendants move to dismiss Count IV by arguing only that it is derivative of Zerveskes's other discrimination claims, and that because those claims should be dismissed, so too should Count IV. As discussed above, the court denies the defendants' motion to dismiss as

to Zerveskes's discrimination claim in Count II. Therefore, because a religious discrimination claim remains in the case, the court denies the defendants' motion as to Count IV.

III.   Wrongful Discharge

Zerveskes alleges in Count V that the defendants wrongfully discharged her because of her refusal to be vaccinated against COVID-19. A wrongful discharge claim under New Hampshire law contains two elements: "(1) the employer terminated the [plaintiff's] employment out of bad faith, malice, or retaliation; and (2) the employer terminated the employment because the employee performed acts that public policy would encourage or because she refused to perform acts that public policy would condemn." Donovan v. S. New Hampshire Univ., 175 N.H. 489, 492 (2022).

Zerveskes's wrongful discharge is based, in part, on her allegations that the vaccination policy and the defendants' termination of her employment violated the Nuremberg Code and the emergency use authorization ("EUA") provision of the Food, Drug, and Cosmetic Act ("FDCA"). See doc. no. 1-1, ¶¶ 83-87. The defendants contend that neither establishes a "public policy" for the purpose of a wrongful discharge claim under New Hampshire law.

The court agrees that neither the Nuremberg Code nor the FDCA provides a basis for a wrongful discharge claim in this case. As noted by this court in a nearly identical case, the Nuremberg Code has no applicability in a case involving a vaccination requirement during the COVID-19 pandemic and it does not govern private employers like the defendants. See McNeil v. Health Care and Rehabilitation Services, No. 23-cv-2-AJ, slip op. at 8-9 (D.N.H. Apr. 17, 2023). Further, the EUA provision of the FDCA "only has legal effect on a person who carries out an activity for which an authorization under this section is issued." Id. at 10 (quotation

omitted). As Zerveskes does not allege that the defendants administered any vaccine to their employees in connection with the vaccination policy, the FDCA cannot be the basis of a wrongful discharge claim. Id.

That conclusion does not mandate dismissal of Count V in its entirety. The complaint alleges that Zerveskes requested a religious exemption to the vaccination policy based on her sincerely held religious beliefs. After the defendants denied the request without explanation, Zerveskes appealed the decision. The defendants did not respond and then terminated Zerveskes for failing to comply with the vaccination policy. Zerveskes alleges that the defendants could have accommodated her by allowing her to continue to work remotely from home without any undue hardship to them.

Viewed generously, these allegations could qualify as conduct that is contrary to public policy. See McNeil, slip. op. at 6-7. The defendants do not argue otherwise.[3] Therefore, although the defendants' motion as to Count V is granted to the extent it is based on the Nuremberg Code or FDCA, it is denied to the extent it seeks dismissal of Count V in its entirety.[4]

---

[3] The defendants' argument, made only in passing, that Title VII and RSA 354-A provide exclusive remedies for Zerveskes's wrongful termination claim is unavailing. The defendants have not shown that the legislature intended to displace claims for common law wrongful discharge. See Faulkner v. Mary Hitchcock Mem'l Hosp., No. 12-CV-482-SM, 2013 WL 6019318, at *1 (D.N.H. Nov. 13, 2013).

[4] The court notes that the defendants did not move to dismiss Count V on the ground that the complaint fails to allege that they terminated Zerveskes out of bad faith, malice, or retaliation. The court therefore does not address that element of a wrongful discharge claim in this order.

Conclusion

For the foregoing reasons, the defendants' motion to dismiss the complaint (doc. no. 13) is granted as to Count V in part as provided in this order and as to Counts I and III in their entirety. The motion is otherwise denied.

SO ORDERED.

_____
Samantha D. Elliott
United States District Judge

September 26, 2024

cc: Counsel of Record.